UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUNE MEDICAL SERVICES, LLC, d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians, and staff, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-444-BAJ-RLB** |
| **REBEKAH GEE, in her official capacity as Secretary of the Louisiana Department of Health, ET AL.** | |

## ORDER

Before the Court is Defendants' First Motion to Compel (R. Doc. 108) filed on April 19, 2018. Plaintiffs filed their Opposition (R. Doc. 112) on May 10, 2018, and Defendants filed their Reply (R. Doc. 120) on May 18, 2018. Plaintiffs also provided the Court with certain documents for *in camera* review pursuant to the Court's August 30, 2018 Order. (R. Doc. 184). Oral argument was held on September 20, 2018. (R. Doc. 191).

**I.     Background**

Plaintiffs initiated this litigation with the filing of their Complaint (R. Doc. 1) on July 1, 2016. They filed a First Amended Complaint for Declaratory and Injunctive Relief (R. Doc. 22) on December 16, 2016, and a Second Amended Complaint for Declaratory and Injunctive Relief (R. Doc. 88) on December 8, 2017. Defendants filed their Answer (R. Doc. 90) to Plaintiff's Second Amended Complaint on December 22, 2017.

Plaintiffs seek declaratory and injunctive relief, challenging the constitutionality of six bills passed by the Louisiana Legislature during its 2016 Regular Session, as well as two emergency regulations. (R. Doc. 1 at 2). Plaintiffs are comprised of three medical doctors, appearing on behalf of themselves and their patients, as well as June Medical Services, LLC,

d/b/a Hope Medical Group for Women ("Hope"), a women's reproductive health clinic in Shreveport, Louisiana. (R. Doc. 88 at 5).

Plaintiffs assert that the six bills passed and two emergency regulations impose unconstitutional requirements on women seeking abortions, women's ability to obtain—and doctors' ability to provide—certain types of abortions at particular points past the last menstrual period, and the availability of abortion services in Louisiana. Plaintiffs assert that these bills and regulations violate their due process and equal protection rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. (R. Doc. 88 at 34-39).

## II. Law and Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 provides a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.     Analysis**

Defendants seek to compel Plaintiffs to produce their patient files. (R. Doc. 108-1 at 1). In support of this, Defendants argue that the only way to test Plaintiffs' allegation that H.B. 386 unduly burdens the decision to obtain an abortion "is by measuring them against the medical records of Plaintiffs[sic] patients." (R. Doc. 108-1 at 1). Defendants suggest that the patient files will provide information such as the distance patients travel to reach the clinic, the gestational age at the time of the initial consultation and the abortion procedure, how many women choose to have abortions within 72 hours of their initial consultation, and potential medical consequences arising from a longer wait. (R. Doc. 108-1 at 3-4). Plaintiffs respond that the patient files are not relevant, production would be overly burdensome, and assert patient privacy. (R. Doc. 112 at 3). Plaintiffs also suggest that much of the information for the production requests in which Defendants seek the patient files is in the Induced Termination of Pregnancy ("ITOP") reports provided to the Louisiana Department of Health, and that the information sought by Defendants that is not in the ITOP reports either (i) does not exist in the patient files, or (ii) can be extrapolated from a combination of the ITOP reports and Plaintiffs' accounting summaries, which they are willing to produce. (R. Doc. 112 at 3, 7-8).

At oral argument, the Court asked Defendants to identify what information they hoped to obtain from the patient files. Defendants indicated that the patient files would reveal how far each patient travelled to get to the Plaintiff clinic, gestational age, the patient's reason for obtaining an abortion, a patient's activities between initial consultation and abortion, whether a patient received financial assistance, and patients' salaries. Defendants also expressed concern that Plaintiffs would provide patient files to their experts, which Defendants suggest would prejudice them if they were unable to obtain the same patient files. When the Court discussed these issues with Plaintiffs, Plaintiffs indicated that their experts would not be receiving or reviewing patient files. Plaintiffs also suggested that a combination of the account summaries and ITOP reports would provide Defendants all of the information they seek, except for a patient's activities between initial consultation and abortion, but noted that patient files were highly unlikely to contain that information.

The Court also reviewed ten sample patient files along with the corresponding account summaries and ITOP reports provided by Plaintiffs. Based on the Court's review of those sample files, the following information is available by way of account summary and ITOP report: date of initial consultation, date of abortion procedure, gestational age, patient's zip code, patient's reported reason for termination of pregnancy, and whether a patient received financial assistance. Absent from all of the patient files reviewed by the Court is any indication of what a patient did with her time between initial consultation and procedure, or the reason for the timing between her initial consultation and procedure. Even were the Court to order production of patient files, there is nothing before the Court to suggest that this information would be contained in those files.

Counsel for Defendants indicated that they had been provided some account summaries, and some ITOP reports, but had no mechanism by which to match them together, i.e., to identify which account summary corresponds with which ITOP report by patient. As explained by Plaintiffs, in order to match ITOP to account summary, Plaintiffs would have to (i) locate the patient ID on the ITOP along with the date; (ii) pull the daily log from that date (which would be located at the Plaintiff clinic if within the past year, or off-site if in excess of a year) to retrieve the patient name; and (iii) electronically retrieve and print the accounting summary. By contrast, pulling the patient file is more challenging because, while the first two steps would be the same, the third would involve locating and pulling the physical paper file. Plaintiffs did indicate, however, that patient files are organized chronologically, at least to some extent, which would mitigate the burden slightly.

Based on the foregoing, as well as the briefing, and the Court's *in camera* review of the sample files, the Court will not compel Plaintiffs to provide patient files.[1] The information sought by Defendants is available through a combination of the ITOP reports and account summaries, notwithstanding information that is not contained in the patient files, such as the activities of a particular patient between initial consultation and abortion procedure. By way of the ITOP reports and account summaries, Defendants will have the information sought at their disposal, including the date of consultation, the date of abortion procedure, gestational age, zip code of residence, whether a patient received financial assistance, and the patient's reported reason for termination of pregnancy.

---

[1] Should the Plaintiffs' expert(s) be provided any patient files for review in contemplation of an expert opinion, or should Plaintiffs assert an argument based on patient demographics (i.e., race, income, socio-economic status, etc.), the Court notes that Defendants may seek additional relief through the proper mechanisms and within the proper timeframes, though the Court takes no position at this time as to the outcome of such hypothetical requests for relief.

At oral argument, Plaintiffs indicated that there were approximately 18,000 abortion patients within the timeframe sought by Defendants. The parties agreed that production of the information with respect to every patient was not necessary, but that a sampling would suffice. Defendants suggested that, based on advice from their statistician, 300 abortion reports and summaries for each year would allow them to analyze the data in a meaningful, representative way, and counsel suggested perhaps the first 25 of each month would work.

The Court finds this to be a reasonable proposal, based on the information and arguments. Accordingly, within thirty (30) days of the date of this Order, Plaintiffs are to provide account summaries and corresponding ITOP reports for the first 25 abortion patients of each month (based on date of initial consultation) from January 1, 2013 through June 30, 2016. In addition, Plaintiffs must provide Defendants with a mechanism by which Defendants can match each ITOP report with each account summary.

Thus, to the extent Defendants' Motion to Compel (R. Doc. 108) seeks production of entire patient files, the motion is denied. However, to the extent Defendants' Motion to Compel (R. Doc. 108) seeks production of documents sufficient to provide particular information, the motion is granted as set forth more fully herein.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendants' First Motion to Compel Discovery (R. Doc. 108) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the body of this Order.

Signed in Baton Rouge, Louisiana, on October 12, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**