# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUNE MEDICAL SERVICES, LLC, d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians, and staff, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-444-BAJ-RLB** |
| **REBEKAH GEE, in her official capacity as Secretary of the Louisiana Department of Health, ET AL.** | |

## ORDER

Before the Court is Plaintiffs' First Motion to Compel Discovery. (R. Doc. 129). The Motion is Opposed. (R. Doc. 146). Plaintiffs have filed a Reply. (R. Doc. 156). Oral argument was held on September 20, 2018. (R. Doc. 191).

## I.   Background

Plaintiffs initiated this litigation with the filing of their Complaint (R. Doc. 1) on July 1, 2016. They filed a First Amended Complaint for Declaratory and Injunctive Relief (R. Doc. 22) on December 16, 2016, and a Second Amended Complaint for Declaratory and Injunctive Relief (R. Doc. 88) on December 8, 2017. Defendants filed their Answer (R. Doc. 90) to Plaintiff's Second Amended Complaint on December 22, 2017.

Plaintiffs seek declaratory and injunctive relief, challenging the constitutionality of six bills passed by the Louisiana Legislature during its 2016 Regular Session, as well as two emergency regulations. (R. Doc. 1 at 2). Plaintiffs are comprised of three medical doctors, appearing on behalf of themselves and their patients, as well as June Medical Services, LLC, d/b/a Hope Medical Group for Women ("Hope"), a women's reproductive health clinic in Shreveport, Louisiana. (R. Doc. 88 at 5).

Plaintiffs assert that the six bills passed and two emergency regulations impose unconstitutional requirements on women seeking abortions, women's ability to obtain—and doctors' ability to provide—certain types of abortions at particular points past the last menstrual period, and the availability of abortion services in Louisiana. Plaintiffs also assert that these bills and regulations violate their due process and equal protection rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. (R. Doc. 88 at 34-39).

## II. Law and Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 provides a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made

pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.  Analysis**

Plaintiffs do not seek to compel response to any particular production request they propounded to Defendant Landry, but rather argue that Landry "unilaterally limited his search to e-mails" for the year prior to the initiation of this litigation. (R. Doc. 129-1 at 1). Plaintiffs suggest that, by not searching for documents beyond emails, Defendant Landry failed to make a reasonable inquiry to find responsive documents. (R. Doc. 129-1 at 3). Defendants' position is that Landry's search was reasonable, including interviews to identify the potential sources of responsive documents, and the email search of 23 custodians. (R. Doc. 146 at 1-2). Defendants argue that any additional search "would be unlikely to uncover responsive documents that would not also be captured by a search of email," and "would likely only lead to a privilege log, which in turn would not disclose details of many documents." (R. Doc. 146 at 2-3).

Counsel for Defendant Landry reiterated at oral argument their position that anything responsive but not privileged would be duplicative of what the search of email returned, and that anything else would be privileged. However, counsel for Plaintiffs noted that they possessed a letter dated June 8 that was not produced. Upon questioning, counsel for Defendant Landry confirmed that this letter was also sent to other abortion providers, and was responsive to Plaintiffs' production requests, but could not explain why it had not been produced.

The Court also questioned counsel regarding whether Defendant Landry had provided Plaintiffs with the search terms and methodology used to locate responsive documents. Counsel

for Defendant Landry indicated that information had not been provided, and suggested that the justification for same was due to Plaintiffs' failure to seek that information by way of interrogatory.

The Fifth Circuit has noted that Fed. R. Civ. P. 26(g) "requires that parties make a reasonable inquiry before conducting or opposing discovery in federal court." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 448 (5th Cir. 1992). Here, Defendants have represented that, in response to Plaintiffs' discovery request, they performed a reasonable search, including interviews with various custodians regarding the location of documents in their possession (R. Doc. 146-1 at 4), and performed an email search of 23 custodians for the period of a year prior to litigation (R. Doc. 146-1 at 5-6) based on the representations made by potential custodians during interviews. Based on interviews with custodians, Defendants represent that it would be "unlikely to have relevant documents that were not captured by his or her email." (R. Doc. 146-1 at 4). Counsel for Defendants also suggested, in briefing as well as oral argument, that a comprehensive search and review of non-email documents "would likely only lead to a privilege log, which in turn would not disclose details of many documents." (R. Doc. 146-1 at 4). Lastly, Defendants note that the only documents identified but not produced or logged as privilege were "(i) a large (multi-gigabyte) archive of documents from a previous litigation involving June Medical, (ii) contracts with and invoices from outside counsel, (iii) a copy of General Landry's June 8, 2016, letter that was referenced in the complaint, and (iv) post-complaint correspondence with the States claims manager." (R. Doc. 146-1 at 4).

In general, the Court is satisfied with the scope of the search based on the representations made in briefing and at oral argument, with little exception. At oral argument, Plaintiffs struggled to identify any document or type of document that they were not receiving as a result

4

of Defendant Landry's response to their production requests, nor could they identify a particular discovery request or requests to which Defendant Landry failed to respond. The Court is also not satisfied that the content of the Department of Justice's files would be relevant and discoverable in this matter, or that a review contemplated by the Plaintiffs would be proportionate to the needs of this case.

Notwithstanding the foregoing, Defendants' justification for not providing information regarding the search terms and the identity of "lower level" custodians is not warranted. Plaintiffs are entitled to understand the nature of how the search of electronic information was conducted, including the search terms used and identity of custodians. To that end, Defendants shall provide Plaintiffs a certified statement within fourteen (14) days of the date of this Order as to the following: (i) the search terms used to complete the electronic search of information; (ii) the identity of each and every custodian of documents that was searched, including name and position; and (iii) a certification that a further search of any other electronic source would likely return information duplicative of that located in the email search, with the exception of the four categories of documents noted at Paragraph 11 of the Declaration of Joseph Scott St. John (R. Doc. 146-1).

Lastly, the Court recognizes that Defendants failed to produce the June 6 letter as it was sent to other abortion providers. Counsel for Defendants conceded at oral argument that this letter had been sent to all abortion providers in the State of Louisiana, and further conceded that it had not been produced in response to Plaintiffs' production requests. The Court finds the letter, as sent to Plaintiffs as well as other abortion providers in Louisiana, relevant and responsive to Plaintiffs' production requests. Accordingly, within fourteen (14) days of the date of this Order,

5

Defendants are to produce the letter as sent to Plaintiffs as well as other abortion providers in Louisiana.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' First Motion to Compel Discovery (R. Doc. 129) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the body of this Order.

Signed in Baton Rouge, Louisiana, on October 23, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**